# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWN E. DENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-18-159-G |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now before the Court are Defendant BNSF Railway Company's Motion for Summary Judgment (Doc. No. 44), Plaintiff Shawn E. Dent's Response (Doc. No. 46), and Defendant's Reply (Doc. No. 51). Also pending are the following *Daubert*[1] motions:

- Plaintiff's Motion to Exclude Defendant's Expert Foster Peterson (Doc. No. 41) with Defendant's Response (Doc. No. 48); and

- Plaintiff's Motion to Exclude Defendant's Expert Amber Stern, PhD, PE (Doc. No. 42) with Defendant's Response (Doc. No. 47).

All of the motions are fully briefed and at issue.

*I.    Background*

On July 3, 2017, Plaintiff was employed by Defendant and working as a locomotive engineer on a fully loaded grain train in Marland, Oklahoma, headed by two locomotives. Compl. (Doc. No. 1) ¶¶ 1, 4. Plaintiff was seated inside the lead locomotive when the train went into an undesired emergency (or "UDE") brake application, causing the rear of the train to collide with the lead locomotive. *Id.* ¶ 4; Def.'s Mot. Summ. J. at 5, Nos. 11-12;

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Pl.'s Resp. (Doc. No. 46) at 8. Plaintiff alleges that as a result of the incident, he "suffered injuries and/or aggravated a pre-existing condition to his back, left shoulder and neck," resulting in "bodily pain," "loss of enjoyment of life," "mental, psychological and emotional pain," and lost wages and earning capacity. Compl. ¶¶ 8-10, 14-16.

Plaintiff filed this lawsuit in February 2018, raising claims against Defendant of liability under: (1) the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq.; and (2) the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. §§ 20301 et seq.

## II. *Opinion Testimony*

Because the *Daubert* motions cited above are pertinent to the Motion for Summary Judgment, the Court first addresses the admissibility of the relevant opinion testimony.

### A. *Federal Rule of Evidence 702*

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinion testimony at trial and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In applying Rule 702, the Court therefore must first determine whether the challenged witness "is qualified . . . by knowledge, skill, experience, training, or education." *Id.*; *see Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 806-07 (10th Cir. 2016); *see also* Fed. R. Evid. 104(a). If so, the Court "must then consider," in accordance

2

with its "gatekeeping" function under Rule 702 and *Daubert*, "whether the expert's opinion is both relevant and reliable." *Taber*, 642 F. App'x at 807 (citing *Daubert*, 509 U.S. at 589). The Court "has wide latitude in deciding whether to exclude expert testimony" pursuant to Rule 702 and *Daubert*. *Schulenberg v. BNSF Ry.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (internal quotation marks omitted).

### B. *Defendant's Proposed Witness Foster Peterson*

Defendant proposes to have Foster Peterson, an engineer who previously worked as a railroad official, render opinion testimony based on his expertise in train dynamics and train handling. *See* Peterson R. (Doc. No. 41-2) at 3; Def.'s Peterson Resp. (Doc. No. 48) at 1. As reflected in his expert report and deposition testimony, Mr. Peterson used what is known as the Train Operations and Energy Simulator ("TOES") program to simulate and analyze the train dynamics involved in the incident of July 3, 2017. *See* Peterson R. at 8-18; Peterson Dep. 18:1-20:18 (Doc. No. 41-1); Peterson Decl. ¶ 4 (Doc. No. 48-1). The TOES program was developed by Transportation Technology Center, Inc., which is an organization that provides transportation research and testing services for the rail industry. Peterson Decl. ¶ 4. According to Mr. Peterson, "BNSF and other Class I railroads utilize[] TOES to perform longitudinal train dynamic stimulation analysis, including to determine the in-train coupler forces generated between locomotives and cars in moving trains." *Id.*

Mr. Peterson and his staff entered multiple items of data into the simulation, including: track information (grade and curvature data), train information (locomotive and railcar types, lengths, and gross weights), and the train handling commands. Peterson Dep. 22:15-23:1; Peterson R. at 11. Using TOES, Mr. Peterson calculated the peak acceleration

range and the in-train forces applied to the lead locomotive in which Plaintiff was located. Peterson Decl. ¶¶ 5-8; Peterson R. at 17-18. The calculated peak acceleration range upon the lead locomotive was 0.14 to 0.71g. Peterson R. at 18; Peterson Decl. ¶ 8.

In Plaintiff's Motion to Exclude Peterson (Doc. No. 41), Plaintiff objects to several discrete aspects of Mr. Peterson's opinions. *See id.* at 5, 7-8. Plaintiff does not dispute that Mr. Peterson is qualified to provide such testimony but challenges the relevance and reliability of the testimony.

*1. Actuation of the Independent Brake*

Mr. Peterson has opined that Plaintiff failed to properly respond after the UDE occurred, including by failing to promptly actuate the independent brake as required by BNSF rules. Peterson R. at 20-21 (opining that Plaintiff's failures "caused the lead locomotive to decelerate faster than the remaining portion of the train"). In his deposition, Mr. Peterson testified that the train's event recorder reflected that Plaintiff actuated the independent brake seven seconds after the UDE but that Plaintiff "should have actuated no more than two or three seconds after the train went into emergency." Peterson Dep. 40:2-13, 45:9-12.

Plaintiff objects that this opinion is baseless and highly speculative because Mr. Peterson failed to take into account that the windows in the cab of the locomotive were open and that the radio inside was turned up all the way when the train first went into emergency, possibly affecting the occupants' ability to hear the train braking. *See* Pl.'s Mot. to Exclude Peterson at 7-8. As argued by Defendant, however, these objections are directed to Mr. Peterson's conclusion, rather than his methodology—i.e., assessing

Plaintiff's actions in light of his own qualifications and experience. Plaintiff's criticisms "do not make the testimony incredible" and therefore go to "the weight [that] the trier of fact should accord the evidence." *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992) (internal quotation marks omitted) (pre-*Daubert*). A party's "disagreement with the expert's conclusion is not grounds for exclusion." *Reed v. Smith & Nephew, Inc.*, 527 F. Supp. 2d 1336, 1344 (W.D. Okla. 2007) (internal quotation marks omitted).

Plaintiff relatedly objects that Mr. Peterson did not analyze "the forces that would have been placed upon [Plaintiff and another employee] had the independent brake been actuated 2 or 3 seconds after the emergency rather than 7 seconds [after the emergency]." Pl.'s Mot. to Exclude Peterson at 8. The Court is required, however, to examine the admissibility of opinions Mr. Peterson has actually issued, not those opinions Plaintiff would like to see. *Cf. Orth*, 980 F.2d at 637 (noting Tenth Circuit authority for the proposition that "otherwise relevant, factually related expert opinion" can support a claim "despite the fact that the expert did not conduct independent tests" (internal quotation marks omitted)).

Further, to the extent Plaintiff is indirectly attacking Mr. Peterson's separate opinion that if Plaintiff had actuated the independent brake sooner the speed differential between the two sections of the train would have been lower, and the force and peak acceleration applied to the lead locomotive would have been less, Plaintiff has not shown that the opinion lacks a sufficient or reliable basis. Mr. Peterson testified that he did not need to do an additional TOES simulation to conclude that if the difference between the speeds of the locomotive and the rear section of the train had been less, then it would have

5

"minimized . . . the overall force" upon the locomotive and "the resulting acceleration due to a recoupling event would [have been] lower." Peterson Dep. 38:19-39:15, 45:9-46:6. This testimony "ha[s] a logical and scientific basis": Mr. Peterson "t[ook] known facts, together with his experience and knowledge . . . , and dr[ew] a rational conclusion." *Orth*, 980 F.2d at 637; *see* Peterson Dep. 46:2-6 (explaining why he did not need to conduct a separate analysis). Plaintiff does not offer any specific refutation of this testimony or of Mr. Peterson's underlying reasoning. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

### 2. *Maximum Compressive Force*

Mr. Peterson additionally opined that, using the TOES program, he determined that the "in-train coupler force on the locomotive in which [Plaintiff] [was] riding" would have been approximately -304,000 pounds. Peterson Decl. ¶¶ 4-6; *see also* Peterson R. at 18. Plaintiff argues: "Mr. Peterson offers no scientific basis for his arriving at 304,000 pounds when the equation that he used to determine these forces [w]as mass time[s] acceleration. Simple math indicates that 32 million pounds times 3 miles per hour, will not yield 304,000 pounds." Pl.'s Mot. to Exclude Peterson at 7. Plaintiff does not explain these numbers, although there are references in the record to the relevant train (though not individual sections) weighing 16,000 tons, and Defendant's Response clarifies that Plaintiff's use of "3 miles per hour" is a reference to the "difference in velocity between the two sections of the train." Def.'s Peterson Resp. at 9. In any event, Mr. Peterson expressly testified that while force and acceleration are related by the equation $F=ma$, when two portions of a train make contact with each other, "not all of the mass of the train is applied to the object as

6

force at the instant of the coupling."[2] Peterson Decl. ¶ 13. Mr. Peterson also explained that the difference in velocity between two objects "is not equivalent to acceleration," as "[a]cceleration is the change in velocity over the time that change occurs." *Id.* ¶ 12. Plaintiff offers no specific challenge to these explanations.

Although Plaintiff may believe that his "[s]imple math" is the better calculator of force, he fails to show any lack of reliability or an insufficient factual foundation in Mr. Peterson's chosen calculation. The Court is not "in a position to declare" whether Mr. Peterson's opinion "is, in fact, correct." *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 994 (10th Cir. 2003). As with Plaintiff's other challenges, his dispute of the accuracy of Mr. Peterson's conclusion is a matter for cross-examination rather than for exclusion under Rule 702 and *Daubert*. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Alnahhas v. Robert Bosch Tool Corp.*, No. CIV-13-178-D, 2018 WL 2293965, at *5 (W.D. Okla. May 18, 2018) (noting that "rejection of expert testimony is the exception rather than the rule").

### C. Defendant's Proposed Witness Amber Stern, PhD, PE

Defendant seeks to have Amber Stern, PhD, PE, render opinion testimony based on her expertise in biomechanics. Dr. Stern has conducted a biomechanical analysis of the

---

[2] "This is because the train is not one solid mass, but a group of individual cars connected by couplers[,] which i[n] turn are connected to the cars/locomotives themselves by draft gears or hydraulic end-of-car cushion units. These draft gears or cushion units are effectively shock absorbers and absorb energy from in-train coupler forces generated during couplings or slack events." Peterson Decl. ¶ 13.

incident of July 3, 2017, including the forces and accelerations experienced by Plaintiff. *See* Stern R. (Doc. No. 42-2) at 3-12.

Plaintiff's Motion is vague. He does not contest Dr. Stern's qualifications to conduct the biomechanical analysis. Nor does he challenge Dr. Stern's identified methodology or specify any particular opinion issued by Dr. Stern as one in which "an impermissible analytical gap exists between premises and conclusion." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005). Rather, Plaintiff argues that Dr. Stern's opinions, as a whole, are not "based on sufficient facts or data."[3] Fed. R. Evid. 702(b); *see* Pl.'s Mot. to Exclude Stern (Doc. No. 42) at 2, 6-7.

Plaintiff objects to Dr. Stern's reliance upon Mr. Peterson's simulation conclusions in forming her opinions—specifically, Mr. Peterson's calculation of the peak forward-directed acceleration range upon the lead locomotive to be 0.14 to 0.71g. *See* Stern R. at 9 (opining that "[t]his level of acceleration is considered low and is routinely experienced during every day and non-injurious activities"). The Federal Rules of Evidence, however, allow an expert such as Dr. Stern to base an opinion upon "facts or data in the case that the expert has been made aware of," Fed. R. Evid. 703, and as set forth above no unreliability

---

[3] Plaintiff nominally raises a relevance argument, arguing that Dr. Stern's opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), but this argument is meritless. Plaintiff simply cites hypothetically helpful opinions rather than explaining how any of Dr. Stern's issued opinions fails to "logically advance a material aspect of the case" or is not "sufficiently tied to the facts of the case [to] . . . aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alteration and internal quotation marks omitted); *cf. Belisle v. BNSF Ry.*, 697 F. Supp. 2d 1233, 1247-48 (D. Kan. 2010) ("Although some aspects of how a body reacts to being struck by a train might be obvious to a jury, the manner of how the body may turn and distance it may be thrown based on weights and angles of being struck are not necessarily common sense conclusions.").

has been shown in Mr. Peterson's calculation that would, in turn, taint an opinion of Dr. Stern.

The other criticisms Plaintiff makes of Dr. Stern's analysis—e.g., that Dr. Stern failed to examine the specific seat in which Plaintiff was sitting at the time of the collision—do not demonstrate a lack of reliability in Dr. Stern's opinions and likewise go toward the weight of the expert testimony rather than its admissibility. *See Daubert*, 509 U.S. at 596; *United States v. Cavely*, 318 F.3d 987, 998 (10th Cir. 2003).

Plaintiff has not shown that Dr. Stern's opinions lack sufficient support or are otherwise unreliable under Rule 702. *See* Fed. R. Evid. 702(b)-(d); *see also Alnahhas*, 2018 WL 2293965, at *5 ("Only when 'an expert['s] opinion is so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded." (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995))).[4]

### III. *Defendant's Motion for Summary Judgment*

#### A. *Federal Rule of Civil Procedure 56*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[4] Also pending is a Motion (Doc. No. 43) filed by Defendant seeking exclusion of Plaintiff's expert Paul Byrnes. Because neither the parties' summary-judgment briefing nor the Court's conclusion as outlined below materially relies upon Mr. Byrnes' proposed testimony, the Court does not find it necessary to resolve the Motion to Exclude at this time. *See* Def.'s Mot. Summ. J. at 7, 13; *id.* Ex. 7 (Doc. No. 44-7); Pl.'s Resp. at 9, 20, 21; *id.* Ex. 4 (Doc. No. 46-4).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

*B. Relevant Facts*

As referenced above, Plaintiff alleges that he was injured on July 3, 2017, when the BNSF train "went into emergency as a result of a coming apart between the first and second car." Compl. ¶ 4. "As a result, the lead two locomotives stopped suddenly, causing the remaining portion of the train to slam into them, causing him to sustain serious bodily injuries and/or aggravation of a pre-existing condition." *Id.*

At the time of the UDE, Plaintiff was seated in a chair at the engineer's console facing forward. Pl. Dep. 104:21-22, 112:8-11 (Doc. No. 44-1). He was using his right hand to manipulate the throttle and his left hand to work the distributed power. *Id.* 113:6-114:2. The train was traveling at approximately 45 miles per hour. *Id.* 114:25-115:2.

Shortly after the train went into emergency, Plaintiff actuated the independent brakes, meaning he released the locomotive brakes from their emergency application. *Id.* 119:7-11. There was then a slack-action event, in which the rear of the train collided with the front portion of the train. *Id.* 119:12-18.

During the slack action, Plaintiff was thrown against the back of his chair. Other than his back hitting the seat, no other part of his body hit anything. *Id.* 122:6-123:3, 124:25-125:5. Plaintiff's left hand was on the touch screen and his right hand was on the throttle control, which he pulled from position 4 to position 8. *Id.* 136:5-137:8. Plaintiff continued to actuate the independent brakes until the train came to a stop approximately 20 to 30 seconds after the slack action. *Id.* 125:19-126:3.

Plaintiff alleges that as a result of the incident, he "suffered injuries and/or aggravated a pre-existing condition to his back, left shoulder and neck" resulting in "bodily

pain," "loss of enjoyment of life," and "mental, psychological and emotional pain" as well as lost wages and earning capacity. Compl. ¶¶ 8-10, 14-16.

*C. Discussion*

Defendant has moved for summary judgment on both the FELA and FSAA claims, arguing that Plaintiff has not demonstrated a causal connection between Defendant's alleged improper conduct and Plaintiff's injuries. *See* Def.'s Mot. Summ. J. at 12-14.

*1. FELA and FSAA*

Plaintiff's FELA claim alleges that Defendant is liable under 45 U.S.C. § 51, which provides:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, . . . or other equipment.

45 U.S.C. § 51.

The Tenth Circuit recently summarized the four elements of a FELA claim:

> (1) the employee was injured within the scope of his employment, (2) the employment was in furtherance of the employer's interstate transportation business, (3) the employer was negligent, and (4) the employer's negligence played some part in causing the injury for which the employee seeks compensation under FELA.

*Ezell v. BNSF Ry.*, 949 F.3d 1274, 1279-80 (10th Cir. 2020). "Within element number three is the implicit requirement that a plaintiff establish all of the elements of supporting a negligence finding in order to prevail on a FELA claim." *Smith v. BNSF Ry.*, No. 17-cv-00977-KMT, 2019 WL 3230975, at *9 (D. Colo. July 18, 2019); *see also Makovy v. Kan. City S. Ry.*, 339 F. Supp. 3d 1242, 1245 (E.D. Okla. 2018) ("Liability under the FELA is

12

premised on the railroad's negligence, however small."). "Thus, a plaintiff carries the burden of demonstrating duty, breach, foreseeability, and causation." *Smith*, 2019 WL 3230975, at *9.

Plaintiff also seeks to recover under FSAA, "which is considered an amendment to the FELA." *Makovy*, 339 F. Supp. 3d at 1245.

> The FSAA does not create an independent cause of action, but railroad employees can recover for violations of the FSAA under the FELA. In other words, the FSAA provides the basis for the claim, and the FELA provides the remedy. In order to recover on a FELA claim premised on a violation of the FSAA, plaintiff need not prove negligence, but need only prove the statutory violation.

*Id.* (citations omitted).[5]

### 2. *Causation*

Defendant argues that Plaintiff has not met his burden to show causation as to either the FELA claim or the FSAA claim. Under FELA's relaxed standard of causation, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011)

---

[5] Defendant has filed a "Stipulation" (more aptly, a one-party concession) stating that "on July 3, 2017, a violation of the [FSAA] occurred, causing an unintended emergency braking application." Def.'s Stipulation (Doc. No. 63) at 1. The Court is not bound to accept a stipulation as to a conclusion of law, such as whether there was a violation of the FSAA. *See Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1188 (10th Cir. 2018). Regardless, the parties do not dispute—and for purposes of the determination of Defendant's Motion the Court assumes—that the UDE represents a FSAA violation, leaving only the need for Plaintiff to prove causation in order to establish Defendant's liability. *See* Def.'s Stipulation at 1 ("Defendant specifically denies . . . that the [FSAA] violation caused or contributed to Plaintiff's alleged injuries."); *cf. Makovy*, 339 F. Supp. 3d at 1247 (finding that a per se violation of the FSAA established duty and breach of duty on plaintiff's FELA claim as a matter of law).

13

(internal quotation marks omitted); *see also Wright v. BNSF Ry.*, 177 F. Supp. 3d 1310, 1317 (N.D. Okla. 2016). And for his claim premised on violation of FSAA, Plaintiff "must prove that the statutory violation was a causative factor contributing in whole or in part to the accident that caused his injuries." *Makovy*, 339 F. Supp. 3d at 1245.

Defendant contends that, in light of Mr. Peterson's opinion "that there was a maximum of 0.71g of acceleration applied to the locomotive carrying Plaintiff," Plaintiff cannot prove "that there is causation between the alleged slack action and his claimed injuries." Def.'s Mot. Summ. J. at 12. According to Defendant, because its experts found the range of acceleration upon the struck locomotive to be "relatively low and within the range considered safe for volunteer testing," and the incident resulted only in Plaintiff being pushed back into his seat, the impact was insufficient to injure Plaintiff's neck, back, or shoulder. *Id.* at 8, 12-14 (citing Dr. Stern's testimony that the accelerations experienced by Plaintiff "would have been comparable to non-injurious everyday types of activities," Stern R. at 12).

The fact that Defendant's experts would not expect to see injuries from the incident to a person in Plaintiff's position based upon their calculations does not demonstrate a lack of a genuine fact dispute as to whether this Defendant "played any part, even the slightest," in producing this Plaintiff's specific injuries or whether the July 3, 2017 UDE caused Plaintiff's injuries "in whole or in part." *CSX Transp.*, 564 U.S. at 688, 692 (internal quotation marks omitted); *Makovy*, 339 F. Supp. 3d at 1245. Plaintiff will present evidence, through his own testimony, of the force he experienced and his condition before and after the collision. *See* Dent Dep. 124:7-13 (stating that the slack-action collision had

14

"more severe" force than did hard helicopter landings he had experienced); *cf.* Compl. ¶¶ 8-10, 14-16 (alleging that as a result of the collision Plaintiff suffered physical and mental pain and damages and was required to seek medical care). Further, Plaintiff will present evidence, through the testimony of his treating physicians, that Plaintiff's neck and shoulder injuries were caused or exacerbated by the work incident of July 3, 2017. *See* Pl.'s Resp. at 13, 16 (citing testimony of Dr. Justin Strickland, Dr. Pedro Murati, Dr. James Weimar, and Dr. Xavier Ng).

As to the latter testimony, Defendant argues that it is inadmissible and therefore should be disregarded in determining the existence of a genuine issue of material fact. Citing *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999), Defendant contends that Plaintiff's physicians may not opine on the question of whether the UDE caused Plaintiff's injuries because they "became aware of pertinent information not from the actual treatment but from [this] lawsuit." Def.'s Reply (Doc. No. 51) at 5-7. In *Davoll*, the Tenth Circuit delineated between types of opinion testimony properly offered by a treating physician and testimony beyond the physician's ken. *See Davoll*, 194 F.3d at 1138 (stating "[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including treatment of the party"). As summarized by the U.S. District Court for the Northern District of Oklahoma:

> A treating physician's testimony may include opinions regarding "prognosis, the extent of present and future disability, and the need for future medical treatment," so long as the opinions are based on the physician's personal knowledge gained from the care and treatment of the plaintiff. The testimony may also extend to opinions on causation, but only "to the limited extent that opinions about the cause of an injury are a necessary part of a patient's treatment." *Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 479 (D. Kan. 2001); *see also Richard v. Hinshaw*, 2013 WL 6709674, at *2 (D. Kan. Dec.

15

18, 2013) ("[M]atters within the scope of [treating physician's] treatment may include opinions about causation, diagnosis, and prognosis"); *Trejo v. Franklin*, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007) (stating that "treating physician opinions regarding causation and prognosis based on examination and treatment of the patient" are proper under Rule 26(a)(2)(C)).

*Wright v. BNSF Ry.*, No. 13-CV-24-JED-FHM, 2016 WL 1183135, at *2 (N.D. Okla. Mar. 28, 2016) (alterations in original) (citation and internal quotation marks omitted) (limiting treating physicians' testimony regarding causation to only opinions that "ar[ose] from their treatment of plaintiff").

Defendant broadly argues that the treating physicians' causation opinions were only produced in response to deposition questions from Plaintiff's counsel that were predicated upon "a litany of assumptions" and so arose only by virtue of this lawsuit. Def.'s Reply at 6-7. Defendant, however, only cites to two such depositions—those of Drs. Strickland and Weimar—and thus fails to show that Dr. Murati's opinion or Dr. Xg's opinion should be discounted on this basis. *See id.*; *cf.* Fed. R. Civ. P. 56(c)(1)(A) (prescribing that a party asserting that a fact cannot be genuinely disputed must support the assertion with citations "to particular parts of materials in the record"). The Court's review of the depositions of Drs. Murati and Xg reflects that their references to the train collision or its connection to Plaintiff's injuries are at least in part based on their own observations and not predicated solely upon assumptions provided by counsel. *See* Murati Dep. 28:5-29:2 (Doc. No. 46-9); Xg Dep. 22:15-25:4 (Doc. No. 46-11).[6] This proposed testimony, which is admissible

---

[6] To the extent that Defendant seeks the exclusion of all testimony by Plaintiff's physicians on the issue of causation, that request is denied at this time. The physicians may testify to "their treatment and care of plaintiff, as well as plaintiff's prognosis, future treatment requirements, and causation—to the extent that such issues are within their personal knowledge gained during their treatment of plaintif[f]." *Berry v. Transp. Distrib. Co.*, No.

consistent with *Davoll*, combined with Plaintiff's own proposed testimony, is sufficient to create a genuine dispute as to whether Plaintiff's injuries were caused by the UDE.

In sum, Defendant has not shown that it is entitled to summary judgment based upon Plaintiff's inability to prove causation under the FELA or FSAA.

CONCLUSION

As outlined above:

1. Plaintiff's Motion to Exclude Defendant's Expert Foster Peterson (Doc. No. 41) is DENIED;

2. Plaintiff's Motion to Exclude Defendant's Expert Amber Stern, PhD, PE (Doc. No. 42) is DENIED;

3. Defendant's Motion for Summary Judgment (Doc. No. 44) is DENIED.

IT IS SO ORDERED this 20th day of March, 2020.

_____
CHARLES B. GOODWIN
United States District Judge

---

12-CV-488-JED-FHM, 2013 WL 6271605, at *7 (N.D. Okla. Dec. 4, 2013) (emphasis omitted).